## Moses M. Pallen *v.* The Agricultural Bank.

Where a judgment debtor, for a valuable consideration, sells a portion of the property covered by the judgment to a third party, and subsequently sells the remainder of the property covered by the judgment to another purchaser, a court of equity will direct the execution to be first levied on the property last sold; if that prove insufficient to satisfy the execution, the same may then be levied on the property first sold.

In the month of May, 1837, the Agricultural Bank obtained judgment against Thomas J. Randolph, who owned several town lots in the city of Vicksburg, all of which were subject to this judgment. Before the judgment was satisfied, Randolph sold one of the lots to Moses M. Pallen, and subsequently sold the other lots to other persons. Execution then issued on the judgment, and was levied on the lot sold to Pallen. Pallen filed his bill, and obtained an injunction. To this bill the bank demurred.

H. S. Eustis for the demurrer.

The case of Clowes *v.* Dickenson, 5 J. C. R. 239, which will be strongly relied on by complainants, is certainly not a fair case to show how far a court of equity will limit and restrain the rights of a judgment creditor. The facts of the case show that the owner of the judgment had purchased all the other real estate of the judgment debtor at a sheriff's sale, at which it was expressly announced that the lands he so bought were subject to the judgment. He then buys the judgment, and sells the lots of complainants. Four years elapse, and complainants file their bill, seeking what?—not to injoin a *bona fide* judgment creditor from pursuing a right given him by law,—but to be relieved from the sale, upon paying a proportion of the incumbrance which existed when they purchased. It must, therefore, be regarded as a decision rather of rights of purchasers between themselves, than of the rights of

purchasers against a judgment creditor. And we do not controvert the position, that as between the grantees, the last alienee must bear the loss. It is true, Chancellor Kent in this case says, "when Kimberly's judgment was about to be inforced in February, 1813, against the two lots of the plaintiff, there can be no doubt that the plaintiff might, by application to this court, have had that sale stayed, and have turned the defendants as owners of that judgment upon the other lands."

We shall show that when the occasion was presented, and he was called upon for such action as he had promised, that Chancellor Kent changed his opinion.

The case of Green *v.* Knapp, 6 Paige's R. 38, in which Chancellor Walworth repeats the opinion of Chancellor Kent, is also a question of the rights of the several grantees amongst themselves. The bill to foreclose did not single out and seize any one parcel of land, but the whole, and brought all the parties into court. When they were all there, the court said as before, the last alienee shall bear the loss. The question did not arise as to the right of the mortgagor to seize any one parcel.

The same is true in the case in 2 Desaus. 560. An annuity upon real estate. All sold but one house. When that was sold there was a specific agreement that it should be bound for the annuity, and a portion of the purchase money retained to pay the annuity. A bill was filed by the annuitant against the purchaser of this house, and an amended bill made the other purchasers parties. Decree that as between these purchasers the house was first bound; but there is nothing in this case to show that the annuitant, if not apprized of the agreement, might not have proceeded against any other parcel.

We shall now show that when the case came before Chancellor Kent on a state of facts analogous to these in the case at bar, and he was desired to do as he had promised in his dictum in the case of Clowes *v.* Dickenson, he was of another opinion.

In the case of Avery *v.* Patten, 7 J. C. R.      , the complainants purchased lands of a judgment debtor, leaving him possessed of other lands, which remained in his possession for years after. An old judgment, which they alleged was collusive and fraudulent, but failed to prove it, was set in motion against them, and their

land advertised for sale. They state these facts, and pray that the judgment be entered satisfied; or if not, that upon their paying it, that it be assigned to them to run it for contribution against the other lands; that the judgment be injoined against their lots, and for general relief. Chancellor Kent says in his opinion in this case, there is no question between the parties to this suit: the plaintiff in the suit at law is pursuing his lawful rights, is without censure, and he dissolves the injunction and dismisses the bill. The intimation is, that when the complainants have paid the judgment creditor, if they will in a proper bill bring the other parties who own the other lands into court, he will give them contribution. This is the case which we consider strictly applicable to the case at bar.

Since the argument in court, I have examined the case of Thompson and Wife *v.* Murray and Wife, 2 Hill's Chan. R. 213. It rather strengthens than conflicts with our position. The judg-ment debtor, it appears in that record, is a solvent person, and the judgment might have been made out of him. But there was no attempt to injoin the judgment creditor—he is not even named. But it appearing to the court that one of the donees had paid the debt, instead of directing the judgment against the solvent judgment debtor, the person so paying is a volunteer, has paid without necessity, and is not entitled to contribution from the other donees, who are made parties: and says the chancellor in his decree below, page 210, "if the bills of sale set forth the real terms of the transfer, then these plaintiffs have ample remedy, if Richard Connoly be solvent, and there is no allegation in the bill of his insolvency. This, then, is also a case in which the question is as to equities amongst the grantees, and not as between them and the judgment debtor. It is true the court say the creditor would be forced, on a proper application, to exhaust the donor's estate, before he would be allowed to go against property which his debtor had given away." This is a dictum, but still we do not question it. It is but justice and equity, that while the judgment debtor has property in possession, that the judgment creditor should first exhaust that. He is the party contracted with—the person naturally to be looked to for payment; and to first seize that

which is possessed by others, would, upon its face, look like an intent to harass and defraud.

The foregoing cases, I think, clearly establish these principles:

1. That a judgment creditor, in the absence of request or pointing out by the judgment debtor of his alienees, has a clear right to run his execution against any parcel of the aliened property when it is all aliened.

2. If there be any in possession of the debtor, he ought clearly to exhaust that first.

3. That if perchance he had levied on the property last aliened, that party would have no right to contribution from the others. Any other one would have a right to contribution, but from those only who purchased what he left.

4. That the complainants in this case may have a right to contribution at any rate, and if the case of Clowes v. Dickinson be correct in its full extent, then they have a right to be reimbursed in full out of the parcels of property last sold, upon a proper application to this court, making the owners parties.

The court is reminded that the lien of judgments has by the High Court been assimilated to the lien of a mortgage. In Taylor v. Porter, 7 Mass. 355, Judge Parsons says, each close 'is liable for the whole money. In Cheeseborough v. Millard, 1 J. C. R. Chancellor Kent uses the expression, if the mortgagee elect to take the whole out of one parcel, &c.

Finally, for the fundamental principles involved in this case, the court is referred to the case of Wright v. Sampson, 6 Ves. 726, opinion of Lord Eldon, in which it is decided that when a person having two funds is driven to one, it is because he cannot give the other creditor the benefit of that fund by subrogation, and without it he would suffer a loss. There is no danger of that in the case at bar. He can get it back from the owners of the other lands on proper application, if he pays us; or at all events the contribution will leave him, according to his own showing of the vastness of the property liable, but a *minimum* loss; and if he would have prevented this, he should have given notice to the judgment creditor what to levy on, and then have brought all the parties into court, so that this court could have decreed instant payment to us by some of them. For the other important point laid down by Lord

Eldon is, that there must be a sure and immediate fund to turn the party over to. The bill is therefore insufficient in not showing such a fund to be available, nor making the owners of the other lots parties. The phrase of Chancellor Kent, "he sits in the seat of his grantor," is borrowed from —— in Sir William Herbert's case, in Coke's Reports, where it is applied to an heir, who, as he derives the benefits without toil, is unquestionably morally bound for the debts of his ancestor, which is not true of a purchaser in the absence of an express promise to pay the debt of his grantor. *Ex parte* Kendall, 17 Vesey, 527, is another opinion of Lord Eldon bearing on the case, where he refuses to turn them over to a particular fund in bankruptcy, unless in suing they could have been turned in that direction first. See the close of the opinion.

A judgment is a lien upon every kind of right vested in the debtor, at the time of the judgment. Carkhuff *v.* Anderson, 3 Binney, 9.

Marshalling assets is never done except where it can be done without injustice to the other creditor. 1 Story's Eq. 528. Nor is it applied in favor of persons who are not common creditors of the same common debtor. If I have a judgment against A. and B. and another have a judgment against A. only, he cannot compel me to make my debt out of B..only. Lord Eldon, 17 Ves.

GEORGE S. YERGER *contra.*

The bank levied an execution against Randolph on property which Pallen, subsequent to the rendition of the judgment, purchased of Randolph. The bill alleges that there was plenty of property to satisfy the judgment owned by Randolph, at the time of the rendition of the judgment, and which was sold by Randolph after he sold to Pallen ; which property is specifically pointed out in the bill. The bill is demurred to.

That the court, in such case, will enjoin the sale and compel the execution creditor to sell the property conveyed last, is well settled. 5 John. Ch. Rep. 244 ; 2 Dess. 561 ; 9 Cowen's Rep. 403 ; Guion *v.* Knapp, 6 Paige Rep. 36; Collins *v.* Drake, 4 Howard.

The CHANCELLOR.

The complainant states that he is the owner of a town lot in Vicksburg, the title to which is derived through a judgment debtor,

who at the time of the sale thereof is alleged to have held other real estate more than sufficient to satisfy the judgment; but that the same was afterwards sold out to different successive purchasers, which, however, the complainant insists is primarily liable to the lien of that judgment, and must be resorted to before the lot in his hands can be subjected. To that end he obtained in vacation an injunction against the judgment creditors, who now demur generally to the bill.

I have heretofore decided the principal question raised by the demurrer; but as the correctness of that opinion has been questioned by the counsel for the defendant, in an argument of much ability and research, I have been induced to re-examine the authorities, and to carefully review the grounds upon which I placed it. I may state at once, that I placed the opinion heretofore expressed upon the broad principles which govern courts of equity in marshalling securities between parties having different equities upon the same things. I am unable to perceive any solid distinction between the current of cases on that subject, and the one now before me. The general principle is, that where one party has a lien on, or interest in two estates, and another has a lien on, or interest in one of those estates only, the latter is entitled to throw the former upon that estate which he cannot reach, if that be necessary to adjust the rights of both parties; and can be done without prejudice to him who holds the double security.

In administering these equities, the court does not assume to divest or postpone a prior incumbrance, but simply to so apply it and limit it, that equal justice may be done to all concerned in the fund to which it attaches. I can see no reason in favor of limiting the doctrine to mere incumbrances. It can have no necessary dependence upon the character of the interest or title of the claimants; it rests upon the intrinsic justice and morality of the maxim that a party shall so exercise his own rights as not to do unnecessary injury to those of others. Why should not the rule be extended to a purchaser? The claims of a *bona fide* purchaser are certainly entitled to as much consideration, in equity, as those of a mere incumbrancer. Why should a judgment creditor be permitted to pursue property into the hands of a subsequent purchaser, when sufficient remained in the hands of his debtor to sat-

isfy his claim? The extent of his equity against his debtor is, to have his judgment paid; if this can be done without trenching upon the rights of others equally meritorious, a court of equity should so order it. There can be no reason for enforcing the judgment against the property in the hands of the purchasers, and then turning him round, for indemnity, upon the very property of the debtor which should have been applied to its payment. The spirit of equity does not tolerate this round of embarrassing litigation, and especially where more complete justice can be done between the parties by a more direct and simple process. But the right of a purchaser in such case does not depend upon general principles alone; there are several cases where the question has been directly adjudged.

In the case of Clowes *v.* Dickinson, 5 John. Ch. Rep. the complainant had purchased of one Vanderheyden two lots in the city of Troy. At the time of the sale there was a prior unsatisfied judgment against the vendor, under which the lots were sold to the defendant in that case. The bill prayed either for a re-conveyance of the lots, or for compensation for their value. Chancellor Kent most distinctly recognized the right of a purchaser from a judgment debtor to compel the creditor to resort to other property of the debtor, provided sufficient remained for the satisfaction of his judgment. It was said, however, in argument in this case, that the question as to such right was not before the court, and that when it came up in the subsequent case of Avery *v.* Patton, 7 John. Ch. Rep. 211, the right of a subsequent purchaser to stay the hand of the creditor, upon such ground, was utterly denied. I think a reference to that case will show that this is an entire misapprehension of the question there raised, and of the grounds upon which the decision was placed. The case was this: the complainants derived title to a tract of land under a judgment debtor; the bill alleged that at the time of the sale by him he was the owner of other lands which were subsequently passed into the hands of other purchasers. The bill was filed against a judgment creditor, and prayed for an assignment of the judgment upon payment, that they might make the owners of the other lands bound by the judgment pay a just proportion of it. There was no allegation that those other lands were sufficient to satisfy

36*

the claim; and it was said in argument, that it would require all the lands, that the debtor owned, for the purpose. The chancellor, in looking to the scope and purpose of the bill, said, "all that the plaintiffs seem to claim, is a right of contribution against the owners of the other lands." This he held could not be decreed, because the other persons interested in the lands, said to be bound by the judgment, were not before the court. And he refused to direct an assignment of the judgment, because he could not determine in that case the extent to which the other owners should contribute, and that a partial and oppressive use might be made of the judgment in the hands of the plaintiffs in that case. It will thus appear, that no principle was settled in that case, applicable to the one before me.

I find that the case of Clowes *v.* Dickinson, before referred to, was taken up by appeal; and although the decision of the chancellor was reversed upon other grounds, yet the principles upon which he placed the rights of the complainant are most distinctly admitted. Justice Woodworth, as to the question of relief to which the complainant was entitled, says : " There can be no doubt that had he applied, either to the supreme court or the court of chancery, they would have directed the execution of Kimberly to be levied on the property of Vanderheyden, not including the two lots. When that property was exhausted, and found not sufficient to satisfy the execution, then, and not till then, should the lots conveyed to the appellant have been sold, to make up the deficiency." " This he says," is a clear principle of equity, established by all the authorities ; and approves itself to the plainest principles of natural justice." 9 Cow. Rep. 405. So in the case of Averall *v.* Wade, Lloyd & Goold. Rep. 252 ; cited in 1 Story's Eq. 589, note. Where a judgment debtor was seized of several estates, and conveyed one of them for valuable consideration and subsequently confessed other judgments, Lord Chancellor Sugden held that the prior judgment should be thrown upon the estates remaining in the hands of the debtor, and that the subsequent judgment creditors had no right to contribution against the purchaser. In the case of Guion *v.* Knapp, 6 Paige, Ch. Rep. 35, the same general principles are admitted. It was held in that case, that where a mortgagor sells a part of the mortgaged premises, the remainder

of such premises in his hands are primarily liable in equity for the satisfaction of the mortgage debt, and that if a mortgagee with knowledge of such sale releases the other mortgage property, he will not be permitted to pursue that which had passed into the hands of a purchaser. It was also held in that case, that property sold by the mortgagor at different times, and to different persons, was liable in the inverse order of alienation, commencing with the last, and proceeding to the first sale. In the case of Thompson *v.* Murray, 2 Hill's Ch. Rep. 213, it was said that even a creditor of a party who had given away a portion of his estate, would in equity be compelled to exhaust the property of the donor before he would be allowed to go against the property so passed into the hands of the donee. The doctrine of these cases rests upon the most obvious principle of distributive justice; that of doing equal equity to all parties concerned. Here the complainant alleges that at the time of the sale of the lot in question, there remained in the hands of the judgment debtor other real estate of value greatly above the amount of the judgment, which gave a lien upon the whole of them; but which was subsequently passed into the hands of successive purchasers. The property is particularly designated and pointed out to the judgment creditor. That the complainant would have a right to go against all the purchasers behind him, commencing with the last, is I think placed beyond doubt, both upon principle and authority. If then the judgment creditor is compelled, for the satisfaction of his judgment, to go against a purchaser from his debtor, I can see no reason why he should not be compelled to proceed against the one upon whom equity would ultimately throw the burden in adjusting the equities of the successive purchasers. Under these views, I am of opinion the demurrer must be overruled, with leave to the defendant to answer.